IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHIRLEY S. ABRAHAMSON,
JOSEPH P. HEIM,
DAVID PERKINS,
JOHN V. LIEN,
MARILYN WITTRY, and
HILDE ADLER,

         Plaintiffs,           ORDER

   v.
                          15-cv-211-jdp

SCOTT NEITZEL, in his official capacity as
Secretary of the Wisconsin Department of Administration,
WISCONSIN DEPARTMENT OF ADMINISTRATION,
ANN WALSH BRADLEY, in her official capacity as
a justice of the Wisconsin Supreme Court,
N. PATRICK CROOKS, in his official capacity as
a justice of the Wisconsin Supreme Court,
MICHAEL J. GABLEMAN, in his official capacity as
a justice of the Wisconsin Supreme Court,
DAVID T. PROSSER, JR., in his official capacity as
a justice of the Wisconsin Supreme Court,
PATIENCE D. ROGGENSACK, in her official capacity as
a justice of the Wisconsin Supreme Court,
ANNETTE KINGSLAND ZIEGLER, in her official capacity as
a justice of the Wisconsin Supreme Court,
PAM RADLOFF, in her official capacity as
Deputy Director of Management Services, Wisconsin State Courts,
MARGARET BRADY, in her official capacity as
human resources officer for the Wisconsin State Courts,
DOUG LA FOLLETTE, in his official capacity as
Secretary of State of the State of Wisconsin, and
MATT ADAMCZYK, in his official capacity as
State Treasurer of Wisconsin,

         Defendants.

---

   The court held a hearing on May 15, 2015, during which the parties presented oral

argument on plaintiffs' motion for preliminary injunction. For reasons stated more fully during

the hearing, the court will deny plaintiffs' motion.

Plaintiffs seek injunctive relief to restore Abrahamson to her position as chief justice of the Wisconsin Supreme Court while this case proceeds to resolution. To succeed, plaintiffs must first show that they have no adequate remedy at law and will suffer irreparable harm if preliminary injunctive relief is denied. *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012). They must also show "some likelihood of success on the merits." *Id.* The court will consider plaintiffs to have cleared these threshold hurdles, at least with regard to Abrahamson's due process claim.[1]

Plaintiffs' due process claim will require the court to address three questions. First, the court will look to state law to identify the interest that plaintiffs allege is protectable by the Due Process Clause. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Defendants are correct that under Wisconsin law, the title of chief justice does not denote an "office" on par with the elected position of justice of the state supreme court. But the state's constitution establishes a position of chief justice with its own powers and duties. Wis. Const. art. VII, § 4, cl. 3. The chief justice has the power to assign judges to assist with the business of the lower courts, and the chief justice is the "administrative head of the judicial system." *Id*. Although the state constitution does not specify what the job of administrative head entails, the submissions of the parties make clear that the chief justice has significant responsibility for managing the judicial branch of the state's government. Dkt. 55 and Dkt. 58.

---

[1] The court has so far focused on Abrahamson, and the alleged deprivation of her constitutional rights. At this point, the court has not decided whether the voter plaintiffs—voters who supported Abrahamson's reelection in 2009, when the law at the time made her chief justice for as long as she cared to serve on the court—have standing or can state a claim upon which relief can be granted. The parties will brief these issues. For now, the court is satisfied that this case contains at least one plaintiff with standing and one defendant against whom injunctive relief would be proper.

The second question is whether the interest in remaining chief justice is one that qualifies as "liberty" or "property" under the Fourteenth Amendment of the Federal Constitution. *Roth*, 408 U.S. at 571. Defendants argue that the position of chief justice is not any individual's property, but a public trust. Thus, according to defendants, the position does not create an interest protected by the Fourteenth Amendment. Defendants rely on *Taylor v. Beckham*, 178 U.S. 548 (1900), and *Snowden v. Hughes*, 321 U.S. 1 (1944). These venerable precedents have not been overruled, but other courts have recognized that subsequent Supreme Court cases express a more expansive view of the interests protected under the Fourteenth Amendment. *See Velez v. Levy*, 401 F.3d 75, 86-87 (2d Cir. 2005) (citing *Roth*, 408 U.S. at 577). For the purposes of deciding plaintiffs' motion for preliminary injunction only, the court will assume that Abrahamson's interest in the position of chief justice is one that would be protected under the Federal Constitution.

The third question is whether Abrahamson received adequate process before she was deprived of the position of chief justice. Plaintiffs contend that they did not receive adequate process because the constitutional amendment did not *expressly* provide that it would apply to Abrahamson as the sitting chief justice. Thus, it would be wrongfully retroactive to implement the amendment before her current term as chief justice concluded (by means provided under the law in effect at the time of her reelection). As the court indicated at the hearing, plaintiffs have no directly on-point precedent, and they have the tougher case to make on the merits. By referendum and state-wide election, the people of Wisconsin amended the very document that gave Abrahamson her interest in the position of chief justice. *See, e.g., Brown v. Perkins*, 706 F. Supp. 633, 634 (N.D. Ill. 1989) ("A general election, with prior registration and public participation, certainly provides pre-termination notice and an opportunity to be heard, and that is precisely what federal due process requires."). But, again for purposes of plaintiffs'

3

motion for preliminary injunction, the court will assume that plaintiffs have shown some likelihood of success on the merits.

If Abrahamson has a constitutionally protected interest in the position of chief justice, and if some defendants have wrongfully deprived her of it, then she has made a minimally adequate showing of irreparable harm, more or less by definition. *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) (a continuing constitutional violation constitutes irreparable harm as a matter of law). Plaintiffs' showing of irreparable harm is not entirely abstract, however. Abrahamson has also described the duties of her former position and the policy-making discretion that the chief justice exercises. Dkt. 55. Assuming that defendants are wrongfully withholding these privileges from Abrahamson, she shows that she is suffering a concrete irreparable injury.

Plaintiffs clear their threshold hurdles, but that does not end the analysis. After the threshold showing is made, the "court weighs the balance of harm to the parties if the injunction is granted or denied and also evaluates the effect of an injunction on the public interest." *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012). The strength of plaintiffs' case affects the court's balancing analysis. "The more likely it is that [a moving party] will win its case on the merits, the less the balance of harms need weigh in its favor. . . . Conversely, if it is very unlikely . . . that [a moving party] will win on the merits, the balance of harms need weigh much more in [its] favor." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1100 (7th Cir. 2008).

Because the court has determined that plaintiffs have made a plausible, but not fully persuasive case on the merits, they would have to make a particularly strong showing that the balance of harms tips in their favor and that the public interest would be served by an injunction. Plaintiffs rely chiefly on the notion that any deprivation of their constitutional rights

is an irreparable harm. But in this framework, the balance of harms is neutral. Each plaintiff in this case has a mirror-image counterpart who would suffer essentially the same constitutional deprivation if the court wrongly issued an injunction. Opposite the former chief justice is the newly elected chief justice, and opposite plaintiff voters are other voters, who supported the 2015 amendment and have an interest in its implementation. Plaintiffs have not documented any actual harm that would befall the court system without an injunction. They have not shown, for example, that the new chief justice is unable to perform the duties of the position or that she will institute damaging and irreversible change. In fact, it appears that the newly elected chief justice is working to make the transition as smooth as possible. *See* Dkt. 58.

With the balance of harms neutral, the critical factor in this case is the public interest. No preliminary injunction that this court could issue would facilitate the orderly administration of the Wisconsin Supreme Court or the state court system. And although plaintiffs allege that there is uncertainty and confusion about who is currently serving as chief justice, they do not provide any particular details or concrete examples of that confusion. Even taking plaintiffs at their word, preliminary injunction pending resolution of the merits would do nothing to reduce uncertainty about who will serve as Wisconsin's chief justice for the next several years. Finally, the State of Wisconsin has a powerful interest in running its own affairs without interference, particularly when the primary question is the interpretation of a state constitutional amendment. To be sure, this court has an unflagging obligation to exercise its jurisdiction when properly presented with questions of federal law. But because the merits are close, and because there is no strong showing that the balance of harms favors plaintiffs, the court must deny the motion for preliminary injunction.

The hearing also addressed the case schedule, which will be set to provide for a prompt decision on the merits. Defendants have filed motions to dismiss, Dkt. 45 and Dkt. 49, and

accompanying briefs in support. These motions provide a vehicle for full consideration of the merits, although the court will convert these into motions for summary judgment, *see* Fed. R. Civ. P. 12(d), to allow for submission of a factual record as needed. Consistent with the parties' recommendations, the court sets the following deadlines:

- The parties will file a stipulation of facts by May 29, 2015.

- Plaintiffs' opposition to defendants' motions will be due June 8, 2015. Plaintiffs' brief will also address damages and any other relief that they seek in this case.

- Defendants' reply will be due June 24, 2015. Defendants will also respond to plaintiffs' arguments regarding damages and other relief.

- Plaintiffs' sur-reply, limited to the issues of damages and other relief, will be due July 1, 2015.

If necessary, the court will schedule oral argument on defendants' motions. For now, the court will not set a trial date, as it appears that this case can be resolved on the papers. The schedule above eliminates the need for a separate preliminary pretrial conference, and so the hearing set for June 9, 2015, before Magistrate Judge Crocker is cancelled. Because of the expedited manner in which this case will proceed, and because discovery will likely be unnecessary, the court will relieve the parties of their formal Rule 26(f) obligations. If discovery becomes necessary, then the parties should inform the court.

Finally, before the hearing on May 15, defendants filed four evidentiary motions. Three of these motions sought to limit the evidence that plaintiffs could introduce during the hearing. Dkts. 62-64. They are now moot. The fourth motion, Dkt. 57, requests judicial notice of several documents. Because the parties will submit a stipulation of facts, this motion appears to be unnecessary, and the court will deny it for that reason. But if disputes arise as to the admissibility of certain documents or other evidence, then either party may file an appropriate motion.

Accordingly, IT IS ORDERED that:

1. Plaintiffs' motion for preliminary injunction, Dkt. 3, is DENIED.

2. Defendants' motion to take judicial notice, Dkt. 57, is DENIED without prejudice.

3. Defendants' motions in limine, Dkts. 62-64, are DENIED as moot.

4. The preliminary pretrial conference scheduled for June 9, 2015, is cancelled as unnecessary.

5. The briefing schedule for defendants' motions to dismiss, Dkt. 45 and Dkt. 49, is STRICKEN, and replaced with the schedule above.

Entered May 19, 2015.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge